UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

---

**KENSINGTON PHYSICAL THERAPY, INC.**

                **Plaintiff**

**v.**

**JACKSON THERAPY PARTNERS, LLC**

             **Defendant**

**Case No. 8:11-cv-02467**

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Anthony I. Paronich
Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
Phone: (617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com

Stephen H. Ring
Stephen H. Ring, P.C.
9901 Belward Campus Drive, Suite 175
Rockville, MD 20850
Phone: (301) 563-9249
Fax: (301) 563-9639
shr@ringlaw.us

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
Phone: (508) 655-1415
mmccue@massattorneys.net

**Table of Contents**

I.    INTRODUCTION.................................................................................................. 1

II.   PLAINTIFF'S STATEMENT OF THE CASE .............................................. 1

III.  THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23 3

   A.   Prequisites of Rule 23(a) ...................................................................... 3

   B.   Requirements of Rule 23(b) ................................................................. 6

IV.   THE PROPOSED SETTLEMENT SATISFIES THE PROCEDURAL AND
     SUBSTANTIVE REQUISITES OF RULE 23 ................................................. 8

   A.   Procedural Fairness ............................................................................... 8

   B.   Substantive Fairness ............................................................................ 10

     1.   The settlement provides significant benefits to the settlement class, particularly in
       light of the uncertainty of prevailing in the litigation. ............................................. 11

     2.   Complexity and length of the litigation ................................................ 13

     3.   The lack of opposition to the settlement supports final approval............................ 15

     4.   Class counsel believes the settlement is fair, reasonable, and adequate. ................. 16

     5.   The extensive discovery and advanced stage of the proceedings weigh in  favor of
       settlement approval. ................................................................................ 16

V.    THE REQUESTED ATTORNEYS' FEES, LITIGATION EXPENSES AND CLASS
     REPRESENTATIVE AWARD ARE FAIR AND REASONABLE ............................. 17

   A.   Application of the percentage of recovery factors favors the requested fee award ........ 17

     1.   Degree of success obtained ...................................................................... 17

     2.   Opposition to the settlement.................................................................... 18

     3.   Qualifications of counsel......................................................................... 18

     4.   Complexity and duration of litigation ..................................................... 19

     5.   Risk of nonpayment and public policy..................................................... 19

     6.   Fees in similar cases ................................................................................ 20

B.    The lodestar cross check also supports a common fund award to class counsel ............ 22

C.    Class Counsel Is Entitled To Recover Litigation Expenses ............................................. 23

D.    The Class Representative is entitled to a fair incentive award ........................................ 24

VI.    CONCLUSION ........................................................................................................... 26

## Table of Authorities

**Cases**

*Accounting Outsourcing, LLC. v Verizon Wireless,*
  2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) ..................................................... 21

*All American Painting, LLC v. Dean Weich, Inc.,*
  No. 09SL-CC05352 (St. Louis County, Mo. June 10, 2011) ................................... 21

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) .............................................................................................. 5, 6

*BNS, Limited v. Redondo Family Chiropractic, Inc.,*
  No. 09-2-19352-5 SEA (King County, Wash. Nov. 30, 2010) ................................ 21

*Boyd v. Coventry Health Care Inc.,*
  299 F.R.D. 451 (D. Md. 2014) ............................................................................ 3, 19

*Brady v. Thurston Motor Lines,*
  726 F.2d 136 (4th Cir. 1984) ...................................................................................... 4

*Brey Corp t/a Hobby Works v. Life Time Pavers, Inc.,*
  Circuit Court for Montgomery County, Maryland, Civil Action No. 349410-V (2011) .......... 5

*Bryan v. Pittsburgh Plate Glass Co.,*
  494 F.2d 799 (3d Cir. 1974) ..................................................................................... 15

*Bussie v. Allmerica Fin. Corp.,*
  50 F. Supp. 2d 59 (D. Mass. 1999) ................................................................... 15, 25

*CE Design, Ltd. v. Cy's Crabhouse,*
  07 C 5456 (N.D. Ill. Sept. 22, 2010) ....................................................................... 22

*CE Design, Ltd. v. Exterior Systems, Inc.,*
  07 C 66 (N.D. Ill. Dec. 6, 2007) .............................................................................. 21

*Community Vocational Schools v. Turner Educational Products, LLC,*
  No. 0800853-31-1 (Bucks County, Pa. Aug. 4, 2010) ............................................ 21

*Cook v. Niedert,*
  142 F.3d 1004 (7th Cir. 1998) ................................................................................. 24

*Decohen v. Abbasi, LLC,*
  299 F.R.D. 469 (D. Md. 2014) ................................................................................... 8

*Denney v. Jenkens & Gilchrist,*
  2005 WL 388562 (S.D.N.Y. February 18, 2005) .................................................... 25

*DeRose Corp. v. Goyke Health Center,*
  No. 06 CH 6681 (Cook County, Ill. Dec. 11, 2008) ............................................... 21

*Domonoske v. Bank of Am., N.A.,*
  790 F. Supp. 2d 466 (W.D. Va. 2011) ..................................................................... 22

*Eclipse v. U.S. Compliance,*
  No. 03 CH 922 (Lake County, Ill. Dec. 23, 2008) ................................................. 21

*Erie Forge and Steel, Inc. v. Cyprus Minerals Co.,*
  Civil No. 94–404 (W.D. Pa. Dec. 23, 1996) ........................................................... 12

*Fitzhenry v. ADT Corp.*, 2014 U.S. Dist LEXIS 166243 (S.D. Fla.  Nov. 3, 2014)..................... 13

*Flinn v. FMC Corp.*, 529 F.2d 1169 (4th Cir. 1975) .................................................... 10

*Flinn v. FMC Corp.*, 529 F.2d 1169(4th Cir. 1975) .............................................. 10, 15

*Flinn v. FMC Corp.*, 529 F.2d 1169, 1173 (4th Cir. 1975) .......................................... 15

Fray-Witzer v. Metropolitan Antiques, LLC,
    *Massachusetts Superior Court, Business Session C.A. 02-5827-BLS (Suffolk, 2008)*........... 22

Fray-Witzer v. Olde Stone Land Survey Company, Inc.,
    *Massachusetts Superior Court, C.A. 08-04175 (Suffolk, Apr. 2011)*............................... 22, 25

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    08 C 5953 (N.D. Ill. Nov. 1, 2010) ................................................................. 21

*G.M. Signs, Inc. v. BackHaulLine*,
    07 CH 758 (Lake County, Ill. Dec. 10, 2009)........................................................ 21

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................... 4

*Grice v. PNC Mortgage Corp. of Am.*,
    1998 U.S. Dist. LEXIS 23877 (D. Md. 1998) ........................................................ 9

*Grissom v. The Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008) ...................................................................... 22

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ...................................................................... 7

*Hammon v. Barry*,
    752 F. Supp. 1087 (D.D.C. 1990) ................................................................. 15

*Helmick v. Columbia Gas Transmission*,
    2010 U.S. Dist. LEXIS 65808 (S.D. W. Va. 2010) ............................................... 18

*Hinman v. M&M Rentals, Inc.*,
    06 C 1156 (N.D. Ill. Oct. 6, 2009) ............................................................... 22

*Holsey v. Armour & Co.*,
    743 F. 2d 199 (4th Cir. 1984) .................................................................... 4

*Holtzman v. CCH*,
    07 C 7033 (N.D. Ill. Sept. 30, 2009)............................................................. 21

*In re Am. Bank Note*,
    127 F. Supp. 2d 417 (S.D.N.Y. 2001).............................................................. 19

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ..................................................................... 19

*In re Domestic Air Tranp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) .................................................................. 12

*In re Kirschner Medical Corp. Securities Litigation*,
    139 F.R.D. 74 (D. Md. 1991)...................................................................... 4

*In Re Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) .................................................................. 17

*In re Newbridge Networks Sec. Litig.*,
    No. 94-1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998)............................................ 12

*In re Prudential Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997) ................................................................. 19

*In re Ravisent Techs., Inc. Sec. Litig.*,
    No. 00-  1014, 005 WL 906361 (E.D. Pa. Apr. 18, 2005).................................... 12

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)........................................................................ 24

*Jones v. Dominion Res. Servs., Inc.*,
    601 F. Supp. 2d 756 (S.D. W. Va. 2009) ........................................................ 23

*Kay Co. v. Equitable Prod. Co.*,
    749 F. Supp. 2d 455 (S.D. W. Va. 2010) ............................................ 18, 19, 22

*Laskey v.  International Union (UAW)*,
    638 F.2d 954 (6th Cir.1981) ........................................................................... 15

*Locklear Electric, Inc. v. Norma L. Lay*,
    09 C 0531 (S.D. Ill. Sept. 8, 2010) ................................................................. 21

*Mann & Co. , PC v. C-Tech Industries, Inc.*,
    2010 WL 457572 (D. Mass. 2009) .................................................................. 25

*McKnight v. Circuit City Stores, Inc.*,
    14 F. App'x 147 (4th Cir. 2001) ...................................................................... 17

*Muhammad v. Nat'l City Mortg., Inc.*,
    2008 U.S. Dist. LEXIS 103534 (S.D. W. Va. 2008) ....................................... 20

*Mulhern v. MacLeod d/b/a ABC Mortgage*,
    Massachusetts Superior Court, 2005-01619 (Norfolk, 2007)........................... 22

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir.2006) ............................................................................. 6

*Saf-T-Gard International, Inc. v. Seiko Corp. of America*,
    No. 09 C 0776 (N.D. Ill. Jan. 14, 2011)........................................................... 21

*Schulte v. Fifth Third Bank*,
    805 F.  Supp. 2d 560 (N.D. Ill. 2011)........................................................ 12, 13

*Singleton v. Domino's Pizza*,
    2013 U.S.Dist. LEXIS 142528 (D. Md. 2013) ...................................... 3, 4, 23, 24

*Stanley v. Cent. Garden & Pet Corp.*,
    891 F. Supp. 2d 757 (D. Md. 2012) .................................................................. 4

*Stanton v. Boeign Co.*,
    327 F.3d 938 (9th Cir. 2003) .......................................................................... 24

*Stillmock v. Weis Markets, Inc.*,
    385 Fed Appx. 267 (2010)................................................................................ 6

*Strang v. JHM Mortgage Sec. Ltd. P'ship*,
    890 F. Supp. 499 (E.D. Va. 1995) ............................................................ 17, 22

*Tabass v. Castle Screen Print Corp.*,
    No. 04 L 1394 (DuPage County, IL, Dec. 10, 2008)........................................ 21

*Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*,
    09 C 1399 (N.D. Ill. May 26, 2011)................................................................. 21

*Teachers' Ret. Sys. v. A.C.L.N.*,
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)........................................... 19

*Teague v. Bakker*,
    213 F. Supp. 2d 571 (W.D. N.C. 2002) .............................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).................................................................................... 4

*Windham v. American Brands, Inc.*,
    565 F.2d 59 (4th Cir. 1977) ............................................................................ 7

*Windmill Nursing Pavilion LTD. v. Unitherm, Inc.*,
    No. 09 CH 16030 (Cook County, Ill. Dec. 17, 2010) ........................................... 21

**Statutes**

47 U.S.C. §227............................................................................................. 1, 12

47 U.S.C. §227(a)(5) ......................................................................................... 1

47 U.S.C. §227(b)(C) ........................................................................................ 1

47 U.S.C. §227(b)(1)(C)(i-iii) ............................................................................. 2

47 U.S.C. §227(b)(3) ...................................................................................... 2, 8

47 U.S.C. §227(b)(C)(D) .................................................................................... 2

**Other Authorities**

A. Conte & H. Newberg, Newberg On Class Actions  (4th ed.)................................. 14

**Rules**

Fed.R.Civ.P. 23(b)(3)......................................................................................... 6

Fed.R.Civ.P. 23 ............................................................................................... 4

Fed.R.Civ.P. 23(a)(4)......................................................................................... 5

Fed.R.Civ.P. 23(b) ........................................................................................... 8

**Regulations**

47 CFR 64.1200(a)(3)(iii-v)................................................................................. 2

## I.  INTRODUCTION

Plaintiff Kensington Physical Therapy, Inc. ("Plaintiff" or "Class Representative"") respectfully submits this Memorandum in Support of its Motion for Final Approval of Class Action Settlement. The terms of the proposed settlement are detailed in the Stipulation of Class Action Settlement (the "Stipulation or the "Settlement") which resolves all claims asserted in this class action.  The Stipulation was previously filed with the Court as an Exhibit to the Motion for Preliminary Approval, Dkt. No. 105-1. The affidavit of the class administrator, Kurtzman, Carlson Consultants ("KCC"), attesting to the notice process successfully carried out in this case is attached at Exhibit A. A draft Final Approval Order is attached at Exhibit B. The affidavits of class counsel in support of the settlement are attached at Exhibit C. A list of consumers who seek to exclude themselves from the class is attached at Exhibit 2 to the KCC Affidavit.[1]  As is set forth below, the proposed settlement satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, and represents an excellent result for the Class and should be approved.  In addition, the request for attorneys' fees, expenses and for an award to the class plaintiff is fair and reasonable.

## II.    PLAINTIFF'S STATEMENT OF THE CASE

The Plaintiff in this case alleges that the defendant, Jackson Therapy Partners, LLC ("Jackson" or "Defendant") engaged in an unlawful telemarketing campaign to promote its business via unsolicited facsimile ("Junk Fax") in violation of federal telemarketing law, the Telephone Consumer Protection Act ("TCPA"). The TCPA strictly regulates, but does not bar,

---

[1] The Class Representative notes that the request for exclusion from the class submitted by Acelera Physiotherapy, was received on December 12, 2014, one day after the deadline imposed by this Court's Order granting Preliminary Approval for the submission of exclusions.  Acelera, apparently, and due to a change of address issue, did not receive notice until December 12, 2014. Under these circumstances, all parties agree this exclusion should be accepted as valid but seek specific judicial approval of this exclusion and forgiveness of its untimeliness.

advertisement via facsimile. <u>See</u> 47 U.S.C. §227. Advertisement via facsimile is lawful if (1) the "prior express permission" of the facsimile recipient has first been obtained, or (2) there is an "established business relationship" ("EBR") between the entity whose goods are being advertised, and the facsimile recipient. 47 U.S.C. §227(a)(5); 47 U.S.C. §227(b)(C). In 2005 the TCPA was amended to mandate that advertisers also include an "Opt Out Notice" on all unsolicited fax advertisements. Plaintiff alleges that Jackson's faxing campaign violated the TCPA both as an unsubstantiated advertisements and for failure to include the required Opt Out Notice.  Jackson vigorously contests that its faxes violated the TCPA in any way.

The case was hard fought throughout.  Jackson filed an initial Motion to Dismiss (Dkt. 13) with an accompanying motion to stay discovery. (Dkt. 14)  Jackson asserted that its individual settlement offer deprived Plaintiff of standing.  Plaintiff opposed and prevailed on that motion. (Dkt. 23) Jackson then moved for reconsideration or in the alternative for certification of the issue to the Fourth Circuit. (Dkt. 29)  Again, Plaintiff opposed this motion. (Dkt. 33)  While that motion was pending, Jackson filed a Motion to Stay Pending Decision by the United States Supreme Court in *Genesis Healthcare v. Symczyk*.  (Dkt. 37).  Although Plaintiff opposed, the Court entered the requested stay.  After the Supreme Court ruled in *Genesis Healthcare* Jackson again moved to dismiss (Dkt. 50), which Plaintiff successfully opposed.  (Dkt. 68).  Finally, Jackson filed a third motion to dismiss, asserting that Plaintiff lacked standing to pursue the case due to a lapse in its corporate status.  Again, Plaintiff successfully opposed this motion, which was denied by the Court.  (Dkt. 91).

The Parties additionally spared over discovery, with Plantiff filing two motions to compel (Dkt.s 35, 45) and Jackson moving for stays of discovery on its motions to dismiss.   The Settlement in the case followed a full exploration of the facts by Class Counsel, including review

of well over ten thousand pages of documents, the issuance of fourteen subpoenas and taking and defending five depositions.

### III.     THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS OF RULE 23

The Settlement Agreement entered into between the parties would establish a settlement fund of $4.5 million dollars to be distributed, after payment of expenses and fees, to a class consisting of over 32,608 individuals and entities who received facsimile advertisements from Jackson from September 6, 2007, through the date of Preliminary Approval Order of the class settlement (October 28, 2015), and who did not exclude themselves from the settlement. The terms of the Settlement Agreement are explained in detail *infra*. However, before a court can approve the substantive terms of a settlement, it must be satisfied that the plaintiff has met the requisites for certification set forth by Rule 23 of the Federal Rules of Civil Procedure. *See Singleton v. Domino's Pizza,* 2013 U.S.Dist. LEXIS 142528 * 10 (D. Md. 2013).

Under Rule 23, to certify a class action for settlement purposes, the class must meet the four *Rule 23(a)* prerequisites and fit within one of the three *Rule 23(b)* categories. *See Boyd v. Coventry Health Care Inc.,* CIV.A. DKC 09-2661, 299 F.R.D. 451, 2014 U.S. Dist. LEXIS 11973, 2014 WL 359567, at *3 (D. Md. Jan. 31, 2014). These requirements are satisfied in this case.

#### A.  *Prequisites of Rule 23(a)*

*Rule 23(a)* provides for certification of a class action if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The settlement class in this case consists of 32,608 class members. Courts in this District have presumed that even a class size of 25 to 30 members raises the presumption that joinder would be impracticable, *In re Kirschner Medical Corp. Securities Litigation,* 139 F.R.D. 74, 78 (D. Md. 1991) *citing Dameron v. Sinai Hosp. of Baltimore,* 595 F. Supp 1404, 1408 (D. Md. 1984), *aff'd in part and rev'd in part* 815 F.2d 975 (4th Cir. 1987); *Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir. 1984) (certification of a class with 74 members deemed appropriate); *Singleton,* 2013 U.S.Dist. LEXIS 142528 * 12 (recognizing no precise threshold for numerosity). The class of 32,608 members easily satisfies the numerosity prerequisite.

The commonality and typicality inquiries "are similar and overlapping." *Stanley v. Cent. Garden & Pet Corp.,* 891 F. Supp. 2d 757, 770 (D. Md. 2012). To establish commonality, the class members must "have suffered the same injury," and "their claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (internal quotations omitted). Common questions of law and fact almost always exist where the claims of the class originate from the same wrongful acts or underlying set of circumstances. *See Holsey v. Armour & Co.,* 743 F. 2d 199, 216-17 (4th Cir. 1984). To show typicality, the representative plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156, 102 S. Ct. 2364, 2370, 72 L. Ed. 2d 740 (1982) (internal quotations omitted). Finally, representation is adequate if the representative plaintiff's interests are not opposed to the interests of the other class members, and class counsel are qualified, experienced, and able to conduct the litigation. *Stanley,* 891 F. Supp. 2d at 770.

Here, all members of the proposed class, including the Plaintiff, received virtually identical facsimile advertisements from Jackson. All members of the class sustained the same

injury- a violation of the TCPA. All class claims are based on the common contention- whether

the Junk Faxes were transmitted in violation of the TCPA. The claims of the Class

Representative are "typical" and "common" to of the claims of the class as the Class

Representative also received Junk Faxes from Jackson in violation of the TCPA.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class." Fed.R.Civ.P. 23(a)(4). As stated by the U.S. Supreme Court in

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997):

> The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest
> between named parties and the class they seek to represent. A class
> representative must be part of the class and possess the same interest and suffer
> the same injury as the class members.

*Id.* at 625-26. The Plaintiff's interests are co-extensive and not in conflict with those of the class

members. There are no antagonistic or conflicting interests exist between the Plaintiff and the

proposed class. Indeed, the Plaintiff and the class members have suffered the same type of harm

and share the same interests in establishing the wrongful nature of Jackson's conduct. The

Plaintiff has also hired lawyers who are experienced in class action litigation. *See* Exhibit C,

Affidavits of Counsel.  Plaintiff's counsel have significant experience litigating TCPA

consumer class actions, and have previously been appointed as class counsel in numerous

TCPA cases, including in a Maryland state court action. *See e.g. Brey Corp t/a Hobby Works v.

Life Time Pavers, Inc.,* Circuit Court for Montgomery County, Maryland, Civil Action No.

349410-V (2011); *see also* Affidavits of Class Counsel attached as Exhibit C.

The representative Plaintiff in this case has elected not to solely pursue its individual

claims in this matter, but to vindicate the rights of all individuals or entities who are similarly

aggrieved, and to hold the Defendant fully accountable for its telemarketing practices.

Accordingly, the *Rule 23(a)* prerequisite of adequacy has been met.

5

### B.  Requirements of Rule 23(b)

Fed.R.Civ.P. 23(b)(3) requires, in pertinent part, that questions of law or fact common to

the members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy. The Supreme Court has made clear "that the predominance of common issues

requirement under Rule 23(b)(3) is a test readily met in certain cases alleging consumer …

fraud." *Amchem Prods., Inc.,* 521 U.S. at 625. The reason is simple: when a defendant takes a

common action (here, facsimile marketing) and applies it to a mass group of victims, the

defenses and necessary proof overwhelmingly applies to the class as opposed to any individual.

In *Stillmock v. Weis Markets, Inc.*, 385 Fed Appx. 267, 273 (2010), the Fourth Circuit vacated

the denial of a motion for class certification where the Plaintiffs alleged that a retail store printed

credit card and debit card receipts in violation of Fair and Accurate Credit Transaction Act's

("FACTA") truncation requirement, instructing with respect to Rule 23(b)(3) analysis:

> Critically, Rule 23(b)(3)'s commonality-predominance test is qualitative rather
> than quantitative. *Gunnells,* 348 F.3d at 429. Thus, while courts have properly
> denied class certification where individual damages issues are especially complex
> or burdensome, *see, e.g., Pastor v. State Farm Mut. Auto. Ins. Co.,*487 F.3d 1042,
> 1047 (7th Cir.2007), where, as here, the qualitatively overarching issue by far is
> the liability issue of the defendant's willfulness, and the purported class members
> were exposed to the same risk of harm every time the defendant violated the
> statute in the identical manner, the individual statutory damages issues are
> insufficient to defeat class certification under Rule 23(b)(3). *See Murray v.
> GMAC Mortg. Corp.,* 434 F.3d 948, 953 (7th Cir.2006) ("Refusing to certify a
> class because the plaintiff decides not to make the sort of person-specific
> arguments that render class treatment infeasible would throw away the benefits of
> consolidated treatment. Unless a district court finds that personal injuries are large
> in relation to statutory damages, a representative plaintiff must be allowed to
> forego claims for compensatory damages in order to achieve class
> certification.").

*Stillmock* at 273. Predominance is a test readily met in certain cases alleging widespread

consumer fraud or injury. *Amchem*, 521 U.S. at 625.

Here, each class member's claim involves almost identical facts and the same legal issue, whether the Junk Faxes at issue violated the TCPA. In addition, the damages provided by the TCPA are statutory, precluding this Court from having to do an individual assessment of damages per claim member. These factors all support a finding that the predominance requirement of Rule 23 has been satisfied. *See Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 428 (4th Cir. 2003) (noting that, in *Rule 23(b)(3)* actions, courts generally find the predominance standard satisfied if common questions predominate over individual questions as to liability) *cert. denied., Healthplan Servs. v. Gunnells*, 159 L. Ed. 2d 287, 124 S. Ct. 2837, 2004 U.S. LEXIS 4352 (U.S., 2004).

Rule 23(b) of the Federal Rules of Civil Procedure also requires the Court to assess whether proceeding via a class action is the superior to other methods for the fair and efficient adjudication of the controversy at issue. Fed.R.Civ.P. 23(b). Courts have repeatedly noted that statutory claims with fixed damage awards, like TCPA claims, are ideal for class certification. "Where the damages are capable of mathematical or formula computation, the class action comes rather close to an ideal one and there is certainly no question of the lack of 'predominance' of the common questions*." Windham v. American Brands, Inc.,* 565 F.2d 59, 68 n.22 (4th Cir. 1977) (quoting Practicing Law Institute, Current Problems In Federal Civil Practice at 491(1975)). This principle is particularly applicable to the instant case and weighs heavily in favor of class certification as the most superior method of adjudication. The TCPA provides for minimum statutory damages of $500 per violation. 47 U.S.C. §227(b)(3). Enforcement of this statute, however, requires individual consumers to initiate litigation and incur its attendant costs and sacrifice. The prospect of recovering $500 per Junk Fax in statutory damages is too low for most

people to promote prosecution of an individual suit under the TCPA. The proposed settlement easily satisfies the superiority requisites of Rule 23.

### IV.    THE PROPOSED SETTLEMENT SATISFIES THE PROCEDURAL AND SUBSTANTIVE REQUISITES OF RULE 23

Before approving a settlement in a certified class action, the court must evaluate its procedural and substantive fairness. *See Rule 23(e)*; *Singleton,* 2013 U.S.Dist. LEXIS 142528 *21; Decohen v. Abbasi, LLC,* 299 F.R.D. 469, 478 (D. Md. 2014). To ensure procedural fairness, *Rule 23(e)* requires: (1) court-approved notice to all class members bound by the proposed settlement, (2) a hearing to determine whether the proposal is "fair, reasonable, and adequate," (3) the parties' statement specifying their agreement, and (4) an opportunity for class members to object. *Id.*

#### A.  Procedural Fairness

In *Rule 23(b)(3)* class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Rule 23(c)(2)(B)*. The content of the notice must sufficiently inform class members of the terms of the proposed settlements and their available options. *See Decohen,* 299 F.R.D. at 478. The notice must state in clear, "easily understood language:"

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under *Rule 23(c)(3)*.

*Id. quoting Rule 23(c)(2)(B)*. Where contact information for class members is known in advance of the settlement, Courts in this circuit have recognized that direct notice is the best practicable notice. See, *e.g., Grice v. PNC Mortgage Corp. of Am.,* CIV. A. PJM-97-3084, 1998 U.S. Dist.

LEXIS 23877, 1998 WL 350581, at *8 (D. MD. May 21, 1998) ("Both the distribution of the notice via first class mail and the thirty-day notice period prior to the final settlement approval hearing permit the class as a whole 'to flush out whatever objections might reasonably be raised to the settlement.'" (*quoting Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)).

Here, the notice, in clear language, explained the basis for the suit and the key terms of the Settlement Agreement including its binding nature, defined the settlement class, provided the date, time, and place of the fairness hearing, and discussed the process by which a class member could enter an appearance at the fairness hearing and request exclusion from the class. *See* Dkt. No. 105-1 at ¶6-10, and Exhibit A, Affidavit of KCC. As required by *Rule 23(e)*, and as directed by the Court in its *Order Preliminarily Approving Stipulation of Settlement, Conditionally Certifying Class, and Entering Schedule* (Dkt. No. 106), KCC took the following actions to effectuate the best notice practicable to class members:

(i)     KCC distributed the Notice via facsimile to 32,569 class members on November 12, 2014.

(ii)    KCC established a case-specific toll-free telephone line staffed by trained operators available to respond to questions of class members.

(iii)   KCC identified 39 class members with no facsimile number and sent those class members actual notice via first class mail.

(iv)    Of these notices sent via first class mail, thirty seven were returned due to out of date addresses.  KCC then updated the contact information for these class members and re-mailed notice packets to these class members via first class mail at their updated address.

(v)     KCC then distributed the Notice via first class mail to 12,680 class members to whom fax notice was rejected as "undeliverable."

(vi)    Of these notices sent via first class mail, 6,687 were returned due to out of date addresses.  KCC was able to located updated contact information for 3,293 of these class members and re-mailed notice packets to these class members via first class mail at their updated address.

*Id.* Class members were given ample notice of the terms of the settlement and ample time to

exclude themselves from the settlement, or to object to the terms of the settlement. In total,

although the best practicable notice was provided to the members of the class, only twenty four

opts were received. No class members objected to the terms of the settlement. Accordingly, the

parties have complied with *Rule 23(c)(2)* and the proposed settlement meets the procedural

requirements for fairness.[2]

### B.  Substantive Fairness

Under Rule 23(e)(2), the Fourth Circuit has instructed in deciding whether to approve a

class action settlement:

> the trial court should consider the extent of discovery that has taken place,
> the stage of the proceedings, the want of collusion in the settlement, and
> the experience of counsel who may have represented the plaintiffs in the
> negotiation.  The fact that all discovery has been completed and the cause
> is ready for trial is important, since it ordinarily assures sufficient
> development of the facts to permit a reasonable judgment on the possible
> merits of the case.  Collusion and bad faith on the part of those purporting
> to represent the class in the negotiations will, of course, impugn the
> settlement.  While the opinion and recommendation of
> experienced counsel is not to be blindly followed by the trial court, such
> opinion should be given weight in evaluating the proposed settlement. The
> attitude of the members of the class, as expressed directly or by failure to
> object, after notice, to the settlement, is a proper consideration for the trial
> court, though "a settlement is not unfair or unreasonable simply because a
> large number of class members oppose it."  And because the cash
> settlement "may only amount to a fraction of the potential recovery" will
> not *per se* render the  settlement inadequate or unfair.

*Flinn v. FMC Corp.,* 529 F.2d 1169, 1173-1174 (4th Cir. 1975)

"A presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable  counsel after

---

[2] The Defendant and Class Administrator additionally satisfied the requirement of CAFA.  See
Affidavit of Jeanne M. Chenila, appended to Ex. A hereto.

meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3 96, 116 (2d Cir. 2005). Courts generally favor settlements of class actions. *See Gunnells v. Healthplan* Servs, 348 F.3d at 427 (4th Cir. 2003)(noting that encouraging settlement is an important factor on considering certification

To evaluate fairness, a court must consider whether the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)

### 1. The settlement provides significant benefits to the settlement class, particularly in light of the uncertainty of prevailing in the litigation.

The settlement in this case is eminently fair given the hurdles  remaining for the putative class in this case. The financial compensation to each class member is significant. Class members in this case will receive a payment of at least $87.00. *See* Dkt. No. 105-1, Stipulation of Settlement at ¶13, Settlement Fund Distribution; Exhibit A, Affidavit of KCC.  Further, class members need do nothing to receive compensation. *Id.*  If a class member does not exclude themselves from the settlement, they will receive payment. *Id.* Further, it is anticipated that an un-known number of class members will not cash their checks. *Id.* If a check is not cashed within 120 days of issuance, the check will be rescinded. *Id.* A second round of payments will then be made to class members who did cash their initial check. *Id.* Accordingly, the recovery per class member will likely far exceed $87.00. If any funds remain after a second round of payments to class members, such funds will be paid to the Electronic Privacy Information Center, the *cy pres* beneficiary previously approved by this Court.  If this settlement is approved, under no circumstances will any of

the settlement funds revert back to Jackson or its insurers.

The statutory damages to which each claimant would have been entitled if they prevailed at trial would have been $500 per facsimile. 47 U.S.C. §227. The filing fee alone to recover this statutory damage would alone almost wipe out the recovery itself. *See Mims v. Arrow Financial Services,* 132 S.Ct. 740, 753 (2012) (noting that the filing fee in federal court is $350 making it unlikely that consumers would flood the federal courts with individual TCPA claims). Each class member in this case stands to receive, at a minimum, $87.00- an amount over 17% of the amount each consumer would receive per TCPA claim had they prevailed at trial, prior to the reduction of expenses and attorneys' fees. "Numerous courts have approved settlements with recoveries around (or below)" 10% of the class's maximum potential recovery. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583-84 (N.D. Ill. 2011), *citing*, *e.g., Lazy Oil Co. v. Witco*, 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving settlement amounting to 5.35% of damages for the entire class period); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.,* Civil No. 94–404 (W.D. Pa. Dec. 23, 1996) (approving settlement of $3.6 million where plaintiffs' expert estimated damages at $33 million); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.*, No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00- 1014, 005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving

settlement which amounted to 12.2% of damages and citing study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the  class members' estimated losses.") (internal citations omitted).  The percentage of payments to class members realized in this case, when compared to the potential recovery, easily falls within the range of similar cases approved by courts.

Further, the anticipated payout to class members in this case is particularly significant in light of the risks of ongoing litigation. If Jackson were to succeed on its chief defense, that the class could not be certified, settlement class members would recover nothing. *See Schulte,* 805 F. Supp.2d  at 582. "Settlement allows the class to avoid the inherent risk, complexity, time, and cost  associated with continued litigation." *Id*. at 586 (citation omitted). "If the Court approves the  [settlement], the present lawsuit will come to an end and [settlement class members] will realize  both immediate and future benefits as a result." *Id*. Plaintiffs and settlement class members will   receive their payments now, instead of years from now—or perhaps never. *See id.* at 582.  Although Class Counsel Particularly in light of the risks of  ongoing litigation and the modest amount of the individual statutory recovery relative to the  costs of individual litigation, the settlement in this case is substantive and fair.  *See Brey Corp. v. LQ Mgmt. LLC*, 2014 U.S. Dist. LEXIS 11223 * 4 (D. Md. January 30, 2014)(denying class certification in TCPA fax case, finding individual actions superior) *Fitzhenry v. ADT Corp.,* 2014 U.S. Dist LEXIS 166243 * 21-22 (S.D. Fla.  Nov. 3, 2014) (same).

## 2.   Complexity and length of the litigation

This case was filed in September of 2011, well over three years ago. During that time, class counsel overcame Jackson's various efforts to defeat the class claims by making individual offers of settlement and/or judgment to the Plaintiff and other potential plaintiffs. These tactics

resulted in extensive litigation and a lengthy stay pending the issuance of a decision from the

United States Supreme Court in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013)*,*

which Jackson claimed could be dispositive of Plaintiff's standing to represent the class. After

the stay was lifted, the Plaintiff then pursued extensive discovery to investigate and prove the

class claims and to identify the class, including taking multiple depositions and extensive third

party subpoena practice. This matter was hard fought and contested by very competent defense

counsel who specialize in the defense of TCPA class claims.  Jackson forcefully raised a host of

defenses in this case, including:

- That Plaintiff lacks standing to pursue this action by virtue of Jackson's settlement offers to Plaintiff.

- That Plaintiff's claim violates the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

- Whether the facsimile received constituted an "advertisement" under the TCPA.

- A challenge to the identity of the class.

- Whether some class members may have consented to or authorized receipt  of the facsimile advertisement.

- Whether the TCPA's use of the term express "invitation" or "permission" create different types of consent to receive a fax ad.

- Whether the case could properly be certified as a class action.

- Whether Plaintiff could prove that the faxes were unsolicited, and were in  fact received by each class member.

The matter resolved only after a full day mediation session with the Hon. Morton Denlow

(U.S. Magistrate Judge, Ret.) in Chicago,  and extensive additional negotiations.  The complexity

of this case, the novel issues of law raised by Jackson, and the length of the litigation all support

a finding that the proposed settlement is fair and reasonable.

### 3.   The lack of opposition to the settlement supports final approval.

As detailed above, the best notice practicable was sent in this case to over 32,608 class members. Only twenty-four class members requested to be excluded from the class. Most significantly, not a single class member objected to the terms of the proposed settlement. The class members have spoken, and they  overwhelmingly support this settlement. The small number of exclusions and lack of any opposition whatsoever strongly supports the conclusion that  the settlement is fair and reasonable.  A. Conte & H. Newberg, Newberg On Class Actions  (4th ed.) § 11.41. *See also Flinn v. FMC Corp.,* 529 F.2d 1169, 1173 (4th Cir. 1975) ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court, though "a settlement is not unfair or unreasonable simply because a large number of class members oppose it."  And because the cash settlement "may only amount to a fraction of the potential recovery" will not *per se* render the settlement inadequate or unfair.") (footnotes and citations omitted); *Hammon v. Barry*, 752 F. Supp. 1087, 1092 (D.D.C. 1990) (85  objections to a settlement involving about 2,000 individuals constitutes "low level of  dissatisfaction."); *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 803 (3d Cir. 1974)  (settlement approved with 20% of class objecting), *cert. denied,* 419 U.S. 900 (1974); *Laskey v.  International Union (UAW),* 638 F.2d 954, 956 (6th Cir.1981) (settlement fair and reasonable when only 7 objections were filed out of 109 noticed class members); *Bussie v. Allmerica Fin.  Corp.*, 50 F. Supp. 59, 77 (D. Mass. 1999).

### 4.   Class counsel believes the settlement is fair, reasonable, and adequate.

"While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court,  such opinion should be given weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 529 F.2d at 1173 (4th Cir. 1975). Counsel, all of whom are experienced in litigating class action cases in  general, and TCPA cases in particular, have expressed their support for the settlement.  *See* Exhibit C, Affidavits of Class Counsel. In sum, the proposed  settlement was the product of extensive, adversarial negotiations between counsel experienced in   class actions. The settlement provides the class with significant monetary relief, particularly in light  of the risk of little or no recovery and certainty of additional costs and expenses if litigation were  to continue.  Thus, in counsel's view, the proposed settlement is fair, reasonable, and adequate  and in the best interests of the class members.

### 5.   The extensive discovery and advanced stage of the proceedings weigh in favor of settlement approval.

"Approval of a settlement is proper where discovery and investigation conducted by class  counsel prior to entering into settlement negotiations was extensive and thorough." *Ky. Grilled Chicken*, 280 F.R.D. at 379. As discussed above,  the parties engaged in broad discovery that allowed counsel to identify class members and to uncover the essential facts relating to the telemarketing campaign at issue. The parties also put the strengths of  their opposing positions to the test at extensive settlement negotiations and in briefing before this Court on multiple motions to dismiss, upon which the Plaintiff prevailed. With this thorough knowledge of  the pertinent facts and understanding of the applicable law, class counsel are well equipped to accurately value class members' claims.

## V.     THE REQUESTED ATTORNEYS' FEES, LITIGATION EXPENSES AND CLASS REPRESENTATIVE AWARD ARE FAIR AND REASONABLE

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees . . . that are authorized . . . by the parties' agreement." There are two methods commonly used for calculating an attorney's fee award: the "lodestar method" and the "percentage of recovery" method. *See In Re Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 260 (E.D. Va. 2009). District courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method in common fund cases. *See id.; Strang v. JHM Mortgage Sec. Ltd. P'ship,* 890 F. Supp. 499, 502 (E.D. Va. 1995).

### A.   *Application of the percentage of recovery factors favors the requested fee award*

The percentage of recovery method awards fees based on a percentage of the recovery of the class, and is set by weighing the (1) results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment and public policy; and (6) awards in similar cases. *Mills Corp. Sec. Litig.,* 265 F.R.D. at 260-61 (*citing, inter alia, In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 733 (3d Cir. 2001)).

### 1.   Degree of success obtained

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *McKnight v. Circuit City Stores, Inc.,* 14 F. App'x 147, 149 (4th Cir. 2001) (internal quotations omitted); *Teague v. Bakker,* 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002). Here, class counsel's efforts have led to the creation of a sizeable Settlement Fund that will compensate the class. Exhibit A, Affidavit of KCC. To the knowledge of class counsel, if approved, the $4.5 million settlement represents the largest TCPA class action settlement ever

17

approved in Maryland state or federal courts.  To recover, what is anticipated to be $87.00, class members need do nothing.  They do not even have to take the time to file a claim.  They will simply be sent a check. *Id.*  Class counsel, after years of hard-fought litigation, have obtained through settlement a superior result for class members.

## 2.   Opposition to the settlement

No one has objected to the settlement and only a handful of class members have opted out of the class. Exhibit A, Affidavit of KCC. The absence of objections by the class to the settlement, indicates that class counsel have achieved a superior result for the class and weighs in favor of their requested award. *See, e.g., Kay Co. v. Equitable Prod. Co.,* 749 F. Supp. 2d 455, 465 (S.D. W. Va. 2010); *Helmick v. Columbia Gas Transmission,* CIV.A.2:07-CV-00743, 2010 U.S. Dist. LEXIS 65808, 2010 WL 2671506, at *6 (S.D. W. Va. July 1, 2010) (finding award of one-third of common fund appropriate, in large part, because of the lack of objections to the settlement despite successful notice to 94.7% of the class).

## 3.   Qualifications of counsel

In addition, as evidenced by the attached affidavits, class counsel have significant experience in consumer class action litigation, specifically in regards to the TCPA, and submit that their qualifications in context of the results obtained in this case speak for themselves. *See* Exhibit C, Affidavits of Class Counsel.

### 4.   Complexity and duration of litigation

To evaluate the complexity and duration of the litigation, the amount of motions practice and discovery is considered in addition to the time between filing the complaint and reaching settlement. *Kay Co.,* 749 F. Supp. 2d at 465. "The case is more complex when the applicable laws are new, changing, or unclear." *Id.* (*citing In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 139 (S.D.N.Y. 2008)). In the settlement context, courts consider whether negotiations were "hard fought," "complex," or "arduous." *Boyd,* 2014 U.S. Dist. LEXIS 11973, 2014 WL 359567, at *12 (internal quotations omitted).

This litigation has been pending since September of 2011. The litigation was vigorously contested by Jackson who raised novel defenses in an effort to preclude the Plaintiff from litigating this case on behalf of the class. In addition, Jackson raised a myriad of defenses to the case in general, and to class certification in particular. The complexity of this litigation, and the duration to which class counsel committed to representing the class, favor in favor of the requested fee award.

### 5.   Risk of nonpayment and public policy

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N.*, 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004); *In re Am. Bank Note*, 127 F. Supp. 2d 417 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig*., 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among

other things, risk of underpayment to counsel).

In this case, class counsel undertook this action on a wholly contingent basis, investing a substantial amount of time and money to prosecute this action with no guarantee of compensation or even the recovery of out-of-pocket expenses. Unlike counsel for defendants, who are paid hourly rates and reimbursed for their expenses on a regular basis, class counsel have not been compensated for any of their time or expenses since this case began, and would have received no compensation or even reimbursement of expenses had this case not been successful. From the outset, class counsel understood they were embarking on a complex, expensive and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. Counsel were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of the case and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. The factor labeled by the courts as "the risks of litigation" is not an empty phrase and, in this case, favors the requested fee award.

### 6.   Fees in similar cases

Finally, in assessing the appropriateness of a requested fee under Rule 23, courts frequently look other to similar cases to assess whether the requested fee award is in-line with cases of a similar degree of complexity and risk to counsel, *see Muhammad v. Nat'l City Mortg., Inc.,* 2008 U.S. Dist. LEXIS 103534, 2008 WL 5377783, at *8 (S.D. W. Va. Dec. 19, 2008) (awarding fees of one-third of common fund in case challenging consumer lending practices). For the benefit of the Court, the below cases represent a representative compilation of attorneys' fees awarded in TCPA class settlements:

20

- *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (fees equal to one-third of the settlement fund);

- *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (fees and expenses equal to thirty-three percent of the settlement fund);

- *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09 C 1399 (N.D. Ill. May 26, 2011) (Coleman, J.) (Doc. 140) (fees equal to one-third of settlement fund);

- *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Doc. 33) (fees equal to one-third of the settlement fund plus expenses);

- *CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2) (fees equal to one-third of the settlement fund);

- *Eclipse v. U.S. Compliance*, No. 03 CH 922 (Lake County, Ill. Dec. 23, 2008) (33.33% plus expenses);

- *G.M. Signs, Inc. v. BackHauLine*, 07 CH 758 (Lake County, Ill. Dec. 10, 2009) (33.33% plus expenses);

- *DeRose Corp. v. Goyke Health Center*, No. 06 CH 6681 (Cook County, Ill. Dec. 11, 2008) (33.33% plus expenses);

- *Windmill Nursing Pavilion LTD. v. Unitherm, Inc.*, No. 09 CH 16030 (Cook County, Ill. Dec. 17, 2010) (33.33% plus expenses);

- *Tabass v. Castle Screen Print Corp.*, No. 04 L 1394 (DuPage County, Ill. Dec. 10, 2008) (33.33% plus expenses);

- *BNS, Limited v. Redondo Family Chiropractic, Inc.*, No. 09-2-19352-5 SEA (King County, Wash. Nov. 30, 2010) (33.33%);

- *All American Painting, LLC v. Dean Weich, Inc.*, No. 09SL-CC05352 (St. Louis County, Mo., June 10, 2011) (one-third plus expenses);

- *Accounting Outsourcing, LLC. v Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (awarding $2,314,328, or more than 35% of the common fund, plus costs);

- *Community Vocational Schools v. Turner Educational Products, LLC*, No. 0800853-31-1 (Bucks County, Pa. Aug. 4, 2010) (fees of 37.96% of fund);

- *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (Doc. 67) (approving fees equal to one-third from future recovery from insurer);

21

- *Fray-Witzer v. Olde Stone Land Survey Company, Inc.,* Massachusetts Superior Court, C.A. 08-04175 (Roach, J.) (Suffolk, Apr. 2011) (approving fee of 33 1/3%);

- *Fray-Witzer, et al. v. Metropolitan Antiques, LLC*, Massachusetts Superior Court, Business Session C.A. 02-5827-BLS (van Gestel, J.) (Suffolk, 2008) (approving fee of 33 1/3%);

- *Mulhern v. MacLeod d/b/a ABC Mortgage*, Massachusetts Superior Court, 2005-01619 (Donovan, J.) (Norfolk, 2007) (approving fee of 33 1/3%);

- *CE Design, Ltd. v. Cy's Crabhouse,* 07 C 5456 (N.D. Ill. Sept. 22, 2010) (Kennelly, J.) (Doc. 373) (same);

- *Hinman v. M&M Rentals, Inc*., 06 C 1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Doc. 225) (same).

### B. The lodestar cross check also supports a common fund award to class counsel

District courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method in common fund cases. *Strang,* 890 F. Supp. at 502. However, courts also have discretion to often employ a lodestar multiplier cross-check to ensure the reasonableness of the award. *See, e.g., Domonoske v. Bank of Am., N.A.,* 790 F. Supp. 2d 466, 475 (W.D. Va. 2011). The lodestar method determines the appropriate fee award by multiplying the reasonable hourly rate by the number of hours reasonably expended. *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). In applying the lodestar method, Courts consider multiple factors to determine if the award is reasonable with an emphasis on the time expended by class counsel, the results obtained, the difficulty of the case and the experience of class counsel. *Id. at 321* (*citing Spell v. McDaniel,* 824 F.2d 1380, 1402 n. 18 (4th Cir. 1987)). When the lodestar method is used only as a cross-check, however, the "exhaustive scrutiny" normally required by that method is not necessary. *Kay Co.,* 749 F. Supp. 2d at 469 (*citing Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check . . . the reasonableness of the claimed lodestar can be tested by the court's familiarity

22

with the case.") (internal citations omitted)). Thus, the Court may accept as reasonable class counsel's estimate of the hours they have spent working on the case. *See, e.g., Jones v. Dominion Res. Servs., Inc.,* 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009).

Class counsel aver that the time they have spent working on this case in the over three years this case has been pending through final approval is approximately 1,613.2 hours. Class counsel bill between $450 (associate) and $700 (partner) per hour. *See Affidavits of Class Counsel, Exhibit C hereto.* Using the rates of class counsel, multiplied by the hours worked, the lodestar on this case is $1,489,215. The fee sought by class counsel is 1/3 of the gross settlement fund or $1,500,000. Class counsel's requested award is requires a negligible multiplier to reach the requested fee (1.007). "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee." *Singleton,* 2013 U.S. Dist. LEXIS 142528, 2013 WL 5506027, at *16. Accordingly, the lodestar cross-check confirms that the requested fee award is reasonable. The Court should award class counsel the requested fee award of one-third of the common fund.

### C.  Class Counsel Is Entitled To Recover Litigation Expenses

Class counsel is further entitled to recover "reasonable litigation-related expenses as part of their overall award." *Singleton,* 2013 U.S. Dist. LEXIS 142528, 2013 WL 5506027, at *17 (*quoting Kabore v. Anchor Staffing, Inc.,* No. L-10-3204, 2012 U.S. Dist. LEXIS 149761, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012) (internal quotations omitted)); Rule 23(h). Such costs include reasonable out-of-pocket expenses that are normally charged by an attorney to a fee-paying client for the provision of legal services. *Singleton,* 2013 U.S. Dist. LEXIS 142528, 2013 WL 5506027, at *17 (*citing Spell,* 852 F.2d at 771).

Class counsel have submitted affidavits documenting their out-of-pocket costs in conducting this litigation. *See* Exhibit C, Affidavits of Class Counsel. They request reimbursement for costs associated with filings, service of process, deposition transcripts, travel, expert witness fees and mediation fees. *Id.* These are typical reimbursable costs, *see Singleton,* 2013 U.S. Dist. LEXIS 142528, 2013 WL 5506027, at *17, and the requested reimbursement is reasonable. Accordingly, the Court should award class counsel the requested $45,739.06 in costs.

### D.  The Class Representative is entitled to a fair incentive award

The Settlement Agreement provides for a $15,000 incentive payment to the Class Representative. As part of a class action settlement, "named plaintiffs . . . are eligible for reasonable incentive payments." *Stanton v. Boeign Co.,* 327 F.3d 938, 977 (9th Cir. 2003). To determine whether an incentive payment is warranted, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998); *see also Singleton,* 2013 U.S. Dist. LEXIS 142528, 2013 WL 5506027, at *18. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook,* 142 F.3d at 1016. Courts often exercise their discretion to approve case contribution awards to plaintiffs who instituted and prosecuted actions on the theory that there would be no class-wide benefit absent their suits. These awards recognize the burdens assumed by plaintiff litigants in instituting and prosecuting the actions, the time spent by plaintiffs on communicating with counsel and fulfilling class responsibilities of supervision, and the risks that plaintiffs bear in bringing the suit. *See In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 82 (D. Mass. 2005).  "In granting incentive awards to named plaintiffs in

24

class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allamerica Fin. Corp.*, 1999 WL 342042, at *3 (D. Mass. May 19, 1999).

In this case, the amount of the service award for the Class Representative was disclosed to the class as part of the notice process. Not a single class member objected. In addition, Jackson does not object to the award. Perhaps most compelling, however, this court should note that, several years ago, the Class Representative rejected an individual offer of settlement and refused to place its own interests above the interests of the class. This compelling fact should be considered by the Court when considering the appropriateness of the incentive award for the Class Representative. In addition, the amount of this award is consistent with those allowed by courts in similar TCPA class actions for class representatives who had a high level of involvement and serves to vindicate the goal of promoting enforcement of consumer protection statutes such as the TCPA. *See Fray-Witzer v. Olde Stone Land Survey Company Inc.,* Massachusetts Superior Court, C.A. 08-04175 (approving $15,000 incentive award to named plaintiff); *Mann & Co. , PC v. C-Tech Industries, Inc.,* 1:08cv11312, 2010 WL 457572, at *2 (D. Mass. 2009) (approving $15,000 incentive award to named plaintiff); *Denney v. Jenkens & Gilchrist,* 2005 WL 388562, at *31 (S.D.N.Y. February 18, 2005)  ("Incentive awards serve an important function in promoting class action settlements, particularly where…the named plaintiffs participated actively in the litigation").

## VI. CONCLUSION

For the foregoing reasons, Plaintiff requests that his Motion for Final Approval be granted. A proposed Final Approval Order is attached to this motion.

PLAINTIFF,
By its attorneys,

/s/ *Anthony I. Paronich*
Anthony I. Paronich
Edward A. Broderick
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
Phone: (617) 738-7080
anthony@broderick-law.com
ted@broderick-law.com

Stephen H. Ring
Stephen H. Ring, P.C.
9901 Belward Campus Drive, Suite 175
Rockville, MD 20850
Phone: (301) 563-9249
Fax: (301) 563-9639
shr@ringlaw.us

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
Phone: (508) 655-1415
mmccue@massattorneys.net

Dated:  February 4, 2015

## **CERTIFICATE OF SERVICE**

I certify that on February 4, 2015, I filed the foregoing document via the Court's ECF system which will effect service upon all counsel of record.

/s/ *Anthony I. Paronich*
Anthony I. Paronich